UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| QWEST COMMUNICATIONS INTERNATIONAL,<br><br>        Plaintiff,<br><br>    v.<br><br>SONNY CORPORATION,<br><br>        Defendant. | No. C06-0020P<br><br>ORDER ON PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT BY DEFAULT |

This matter comes before the Court on a motion for default judgment by Plaintiff Qwest Communications International ("Qwest"). (Dkt. No. 28). Defendant Sonny Corporation has not responded to this motion. Having reviewed the motion and the balance of the record in this case, the Court GRANTS in part and DENIES in part Qwest's motion.

The Court GRANTS the motion to the extent Qwest seeks entry of a default judgment against Sonny Corporation on its claims for trademark dilution, as well as a permanent injunction that restrains Defendant from using the "Qwesty" mark. The Court DENIES the motion to the extent Qwest seeks an order: (1) cancelling Defendant's trademark application; (2) requiring Defendant to transfer the <qwesty.com> Internet domain name to Qwest; (3) requiring Defendant to destroy materials

ORDER - 1

containing the "Qwesty" mark; or (4) awarding attorney's fees to Qwest pursuant to 15 U.S.C. § 1117(a).

The reasons for the Court's order are set forth below.

**Background**

Plaintiff Qwest Communications International, Inc. ("Qwest") filed this lawsuit in January 2006 against Defendant Sonny Corporation. Qwest is in the telecommunications business, as well as a number of other businesses. Qwest owns various trademarks registrations for the "Qwest" mark.

Sonny Corporation makes a plush toy called "Qwesty," which it markets at the <qwesty.com> website. According to Qwest, Defendant filed a trademark application with the U.S. Patent and Trademark Office (PTO) in 2002 to register the mark "Qwesty." Qwest has filed an opposition to this application in the Trademark Trial and Appeal Board.

Qwest's complaint raises six claims against Defendant: (1) trademark dilution under the Lanham Act; (2) unfair competition and false designation of origin under the Lanham Act; (3) denial of trademark registration under 15 U.S.C. § 1119; (4) trademark dilution under RCW 19.77.160; (5) violations of the Washington Consumer Protection Act; and (6) unfair competition under Washington common law.

Defendant has appeared in this matter through counsel and previously filed a motion to dismiss for lack of personal jurisdiction. The Court denied Defendant's motion to dismiss on May 15, 2006. Since that time, Defendant has not filed an answer to Qwest's complaint. The Clerk entered an order of default against Defendant on September 27, 2006. Qwest has now moved for entry of a default judgment. Qwest's certificate of service indicates that the motion was served upon Defendant's counsel through the CM/ECF system.

**Analysis**

Qwest's motion is brought under Fed. R. Civ. P. 55(b)(2). In considering a motion for default judgment, "the general rule is that well-pled allegations in the complaint regarding liability are deemed

ORDER - 2

true." Fair Housing of Marin v. Combs, 285 F.3d 899, 907 (9th Cir. 2002). Because Qwest's motion for default judgment focuses on its claims for trademark dilution, the Court addresses those claims first.

1.   Trademark Dilution Claims

Plaintiff's complaint raises claims for trademark dilution under the Federal Trademark Dilution Act (FTDA), 15 U.S.C. § 1125(c), and Washington state law, RCW 19.77.160. At the time Qwest's complaint was filed, the FTDA and Washington's trademark dilution statute were essentially identical. In its complaint, Qwest alleges: (1) its "Qwest" marks have gained strong public recognition and are famous; (2) Defendant has advertised, promoted, and provided plush toys on the Internet under the mark "Qwesty"; (3) Defendant's first commercial use of the "Qwesty" mark for its goods occurred after the "Qwest" marks had become famous; and (4) Defendant's use of the "Qwesty" mark in the advertising and promotion for its goods dilutes the strength and value of Plaintiff's "Qwest" marks. The Court finds that the allegations in Plaintiff's complaint, if deemed true, are sufficient to establish Defendant's liability for trademark dilution under the FTDA and Washington state law.

When Qwest filed its complaint, the FTDA provided that a plaintiff who prevailed under the statute "shall be entitled only to injunctive relief . . . unless the person against whom the injunction is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark." 15 U.S.C. § 1125(c)(2) (2005).  The FTDA has since been amended by the Trademark Dilution Revision Act of 2006, which took effect on October 6, 2006. See Pub. L. 109-312, 120 Stat. 1730. Similar to the prior version of the law, the amended version of the FTDA provides that a prevailing plaintiff "shall be entitled to injunctive relief," with additional remedies available in certain circumstances. Id. Here, Plaintiff seeks several different remedies for trademark dilution:

> (1) Enjoining defendant, its agents, employees, successors, licensees, and assigns, and anyone acting in concert or privity with Defendant, jointly and severally, from diluting the QWEST Marks and /or using the QWEST Marks or any QWEST derivative mark – including QWESTY – in any way, or using any other word, words, phrases, domain names, symbols, logos that would dilute the distinctive quality of the QWEST Marks in

ORDER - 3

any way in connection with or in the provision of services or in the marketing, offering, selling, disposing of, licensing, leasing, transferring, displaying, advertising, reproducing, developing or manufacturing of their business, services and products;

(2) Ordering that the registration for the domain name <qwesty.com> be conveyed from Defendant to Qwest;

(3) Ordering Defendant to destroy all materials in its possession or under its control that contain the mark QWESTY, or other QWEST derivative mark;

(4) Ordering the Director of the Patent and Trademark Office to cancel Defendant's pending trademark application for the "Qwesty" trademark and any other applications for a word, words, phrases, symbols, logos, etc. that would dilute and/or create a likelihood of confusion, mistake and/or deception with the QWEST Marks; and

(5) Ordering Defendant to pay Qwest its fees and costs in an amount of $31,085.90.

(Dkt. No. 28 at 1-2).

Under the previous and current versions of the FTDA, Qwest is clearly entitled to its request for injunctive relief.[1] The other four forms of relief sought by Qwest are considered below.

*Transfer of Domain Name*

Qwest cites no authority under the FTDA or Washington state law for the Court to order Defendant to convey the <qwesty.com> domain name to Qwest. While such a remedy is provided under the federal Anti-Cybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d), Qwest has not brought claims under the ACPA. Since the passage of the ACPA, a number of courts have held that the FTDA may not be used to obtain possession of a defendant's domain name. See, e.g., Porsche Cars North America, Inc. v. Porsche.net, 302 F.3d 248, 260-62 (4th Cir. 2002). Therefore, the Court denies Qwest's request an order directing Defendant to transfer the <qwesty.com> domain

---

[1] Because Qwest would be entitled to the injunctive relief it seeks under the former or the current versions of the FTDA, it is not necessary for the Court to reach the question of which version of the statute should apply to Qwest's request for injunctive relief. At least one court has held that 2006 amendments to the FTDA should apply to claims for prospective injunctive relief in a case that was filed before the effective date of the amendments. See Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC, 2006 WL 3182468 at * 7 (E.D. Va. Nov. 3, 2006).

ORDER - 4

name to Qwest. Under the terms of the injunction entered by the Court, however, Defendant will no longer be permitted to use the <qwesty.com> domain name.

### *Ordering the PTO to Cancel Defendant's Trademark Application*

Qwest cites no authority for its request for an order directing the PTO to cancel Defendant's pending trademark application for the "Qwesty" mark. Although Section 37 of the Lanham Act (15 U.S.C. § 1119) authorizes a court to order the cancellation of a trademark <u>registration</u>, the statute does not authorize a court to cancel a pending trademark <u>application</u> – a distinction that has been noted by other courts. See, e.g., <u>GMA Accessories, Inc. v. Idea Nuova, Inc.</u>, 157 F. Supp.2d 234, 241 (S.D.N.Y. 2000) (noting that plaintiff "cites no authority for the proposition that § 37 of the Lanham Act permits a district court to cancel a pending trademark application"). Therefore, the Court declines to order this relief.

### *Ordering Destruction of Qwesty Materials*

Qwest asks the Court to order Defendant to destroy all materials in its possession or control that contain the "Qwesty" mark. Under the version of the FTDA in effect at the time Qwest filed suit, a plaintiff who proved that the defendant "willfully intended to trade on the owner's reputation or to cause dilution of the famous mark" was "entitled to the remedies set forth in sections 1117(a) and 1118" of the Lanham Act, "subject to the discretion of the court and the principles of equity."[2] 15 U.S.C. § 1125(c)(2) (2005). Section 1118 of the Lanham Act authorizes a court to order destruction of materials containing "the word, term, name, symbol, device, combination thereof, designation, description, or representation that is the subject of the violation . . . ."

In this case, Qwest's complaint does not specifically allege that Defendant willfully intended to trade on Qwest's reputation or that Defendant willfully intended to cause dilution of the Qwest marks. In terms of "willful" conduct, the complaint only makes the following allegations:

---

[2] The Trademark Dilution Revision Act of 2006 includes similar, although not identical, provisions.

ORDER - 5

  * Defendant's use of the Diluting mark and Defendant's actions described herein have been (and continue to be) deliberate, willful, and with disregard to the rights of Qwest. (Complaint ¶ 27).

  * Defendant's willful and deliberate use of the Qwest Marks in the advertising and promotion for its goods, which are beyond the ambit of Qwest's quality and control and inspection procedures, tarnishes the Qwest Marks. Id. ¶¶ 32, 42.

The Court does not regard these allegations as sufficient to establish that Defendant willfully intended to cause dilution of Qwest's marks or to trade on Qwest's reputation. In addition, even if Qwest had proven that Defendant willfully intended to cause dilution of Qwest's marks or to trade on Qwest's reputation, a destruction order under 15 U.S.C. § 1118 is discretionary. See, e.g., Gazette Newspapers, Inc. v. New Paper, Inc., 934 F. Supp. 688, 697 (D. Md. 1996); Kelley Blue Book v. Car-Smarts, Inc., 802 F. Supp. 278, 293 (C.D. Cal. 1992). Here, the Court does not find that it is necessary to order destruction of materials containing the "Qwesty" mark because the injunctive relief ordered by the Court should be sufficient to prevent Defendant from making further use of the "Qwesty" mark. See, e.g., Kelley, 802 F. Supp. at 293 (destruction order unnecessary where injunctive relief granted).

### *Attorney's Fees and Costs*

Qwest seeks more than $31,000 in attorney's fees and costs under 15 U.S.C. § 1117(a), a provision of the Lanham Act that permits the recovery of fees in "exceptional" cases. As noted above, under the version of the FTDA in effect at the time Qwest filed this lawsuit, a plaintiff could invoke the remedies provided by Section 1117 of the Lanham Act in cases where a defendant "willfully intended to trade on the owner's reputation or to cause dilution of the famous mark," with such remedies "subject to the discretion of the court and the principles of equity." 15 U.S.C. § 1125(c)(2) (2005). Under Section 1117(a) of the Lanham Act, a court "in exceptional cases may award reasonable attorney fees to the prevailing party." The Ninth Circuit has indicated that an "exceptional" case may exist where a defendant's unlawful conduct is "malicious, fraudulent, deliberate, or willful." Gracie v. Gracie 217 F.3d 1060, 1068 (9th Cir. 2000).

ORDER - 6

As noted above, Qwest's complaint does not specifically allege that Defendant "willfully intended to trade on the owner's reputation or to cause dilution" of Qwest's marks. As a result, Qwest is not entitled under the FTDA to seek the remedies provided by Section 1117 of the Lanham Act. Even if Section 1117 were applicable, the Court would decline to exercise its discretion to award attorney's fees to Qwest in this case. Although Qwest's complaint alleges in general terms that Defendant's conduct was "willful" and "deliberate," the Court does not regard such vague and general allegations as sufficient to support a conclusion that Defendant willfully and deliberately intended to violate Qwest's rights under the Lanham Act.

However, Qwest is entitled to an award of costs as the prevailing party in this matter under 28 U.S.C. § 1920. Qwest may file a motion for costs consistent with the procedures set forth in Local Civil Rule 54(d).

2.  <u>Remaining Claims</u>

In addition to trademark dilution claims, Qwest's complaint also raises claims for: (1) unfair competition under the Lanham Act; (2) unfair competition under Washington common law; (3) Washington Consumer Protection Act (CPA) violations; and (4) cancellation of trademark registration under 15 U.S.C. § 1119. However, Qwest's motion for default judgment only mentions its unfair competition claims in passing. <u>See</u> Opening Brief at 2-3. In addition, the proposed nine-page order that Qwest submitted to the Court along with its default judgment motion only addresses Qwest's claims for trademark dilution and does not include any provisions regarding its other claims. Given that Qwest's proposed order on its motion for default judgment does not include any provisions regarding its remaining claims, the Court declines to enter a default judgment in Qwest's favor on those claims.

In any case, it does not appear that Qwest would gain any additional relief under its remaining claims. Qwest has cited no authority suggesting that it would be entitled under its remaining claims to an order cancelling Defendant's pending trademark application or requiring Defendant to transfer the

ORDER - 7

<qwesty.com> domain name. For the reasons discussed earlier, the Court would also decline to require Defendant to destroy all materials containing the "Qwesty" mark or to pay Qwest's attorney's fees under 15 U.S.C. § 1117(a) even if Qwest were to obtain a default judgment on its unfair competition claims under the Lanham Act. Finally, Qwest has cited no authority suggesting that trademark dilution may give rise to a claim under the Washington CPA, nor has Qwest requested fees under the CPA. Qwest also has not demonstrated compliance with RCW 19.86.095, which provides that a private CPA plaintiff seeking injunctive relief must serve a copy of its initial pleading with the attorney general.

**Injunctive Order**

Consistent with the provisions above, the Court ORDERS as follows:

The Court hereby issues a permanent injunction that enjoins Defendant Sonny Corporation and its agents, employees, successors, licensees, and assigns, and anyone acting in concert or privity with Defendant, jointly and severally, from diluting Plaintiff's QWEST marks and/or using the QWEST marks or any QWEST derivative mark – including QWESTY – in any way, or using any other word, words, phrases, domain names, symbols, or logos that would dilute the distinctive quality of the QWEST marks in any way in connection with or in the provision of services or in the marketing, offering, selling, disposing of, licensing, leasing, transferring, displaying, advertising, reproducing, developing, or manufacturing of their business, services, and products.

To provide Defendant with sufficient time to comply with the terms of this order, this injunction shall take effect at <u>12:01 a.m.</u> Pacific Standard Time on <u>December 11, 2006</u>.

The Clerk is directed to send copies of this order to all counsel of record.

Dated: November 30, 2006

                                        s/Marsha J. Pechman  
                                        Marsha J. Pechman  
                                        United States District Judge